(No. 5283.   December 26, 1929.)

ROBERT DUNN, Respondent, v. BOISE CITY, a Municipal Corporation, Appellant.

[283 Pac. 606.]

Clarence T. Ward, for Appellant.

C. H. Edwards and Harry S. Kessler, for Respondent.

VARIAN, J.—Action for damages caused by flooding the premises of plaintiff and his assignor in January, 1925. The case was heretofore reversed on appeal from a judgment of nonsuit, wherein this court construed the sufficiency of the notice of damage required to be given the city under C. S., sec. 3847. (*Dunn v. Boise City*, 45 Ida. 362, 262 Pac. 507, 508.)

Hull's Gulch and Slaughterhouse Gulch, through which water from rain and melting snows drains from the foothills lying north and east of Boise, are natural drainage courses. Many years ago private citizens constructed certain flumes and other works to control the flood waters coming out of these two gulches, which were later, and long before the damage here complained of, taken over by the city, which has from time to time erected dams in each of said gulches and repaired old flumes, constructed new ones, and in the case of Hull's Gulch laid a 33-inch galvanized iron pipe from the mouth of said gulch to the Cruzen Canal, through which the waters of said gulch were conveyed northeasterly

to Sand Creek leading out of Slaughterhouse Gulch and eventually emptying into the Boise River. Sand Creek, for some years prior to the damage complained of, has been utilized by the city as part of a system of drainage to carry off the waters originating in both Hull's Gulch and Slaughterhouse Gulch. Much of Sand Creek has been flumed, part of which flume is on top of the ground, and an effort made to confine the stream within narrower limits in order to carry off the excess of sand and debris that comes down each season with the water from said gulches. The original course of Sand Creek has been followed in the construction of artificial works. Near the intersection of Irene and Twenty-fourth Streets, the city in 1917 constructed a flume across the canal of the Boise Water Company, designed to carry the full run off from Hull's Gulch and Slaughterhouse Gulch, flowing in Sand Creek, across said canal. Formerly, Sand Creek ran under said canal. On January 29, 1925, this flume, due to decaying of the timbers of which it was built, broke in the center, under the load of sand and water coming through Sand Creek, so that the said canal of the Boise Water Company became filled with water, sand, and debris, causing the canal to overflow and the water to flow upon the lands of plaintiff and his assignor and into the cellars of their houses, depositing large quantities of sand, slime and silt therein, damaging buildings, foundations, lawns and personal property. Immediately upon receiving notice that the flume had broken, the city caused it to be rebuilt.

This is not a case where damage accrues by reason of the grading up of a street so that the abutting lower lands receive all the surface waters that before the improvement flowed in the street. The record shows that in providing a drainage system, the city undertook to utilize the channel of Sand Creek for that purpose, and altered and changed it so as to carry the run off from both gulches, instead of from Slaughterhouse Gulch alone, narrowing the channel, and providing in lieu thereof a system of dams and flumes, some of which it had built and others of which it had taken

over and maintained in order to direct and control the waters flowing out of said gulches. (*Taylor v. City of Austin*, 32 Minn. 247, 20 N. W. 157; *Vaccarini v. City of New York*, 54 Misc. Rep. 600, 104 N. Y. Supp. 928.)

■■ The city was not an insurer of the condition of its drainage system, but was bound to use ordinary care and skill in constructing and maintaining it. It was likewise bound to take notice of the liability of the timbers to decay from time or use, and to take such measures as ordinary care would dictate to guard against the breaking of the flume across the Boise Water Company's canal because of the decay of timbers used in its construction. (*City of Fort Wayne v. Coombs*, 107 Ind. 75, 57 Am. Rep. 82, 7 N. E. 743.)

■■ The record is silent as to any inspections or other precautionary measures taken by the city to prevent the flume from becoming unsafe. The city was under the duty of exercising due diligence and a reasonable degree of watchfulness from time to time in ascertaining the condition of the several structures erected in Sand Creek. (*McCarthy v. City of Syracuse*, 46 N. Y. 194; *Gravey v. City of New York*, 117 App. Div. 773, 102 N. Y. Supp. 1010; *Vittucci Importing Co. v. City of Seattle*, 72 Wash. 192, 130 Pac. 109.) The duty of the city to keep the flume across Boise Water Company's canal in repair was not performed by waiting to be notified by citizens that it was out of repair, as was said in *McCarthy v. City of Syracuse, supra.*

■ The rule that the city, in the absence of notice, express or implied, is not liable for damages accruing by reason of a latent defect, announced by this court when considering the "sidewalk" cases cited by appellant (*Miller v. Village of Mullan*, 17 Ida. 28, 19 Ann. Cas. 1107, 104 Pac. 660; *Goodman v. Village of McCammon*, 42 Ida. 696, 247 Pac. 789), has no application here. (See *Vittucci Importing Co. v. City of Seattle, supra; District of Columbia v. Gray*, 6 App. D. C. 314.)

The proximate cause of the damage was the city's failure to keep the flume across Boise Water Company's canal in

repair, the breaking of which, due to decay of its timbers, permitted water, sand, and debris flowing in Sand Creek, from the two gulches aforesaid to escape and overflow upon the lands of plaintiff and his assignor.

[6] The facts of this case bring it within the principle laid down by this court to the effect that where a city diverts a stream of water from its natural channel and undertakes to convey the same in an artificial channel it should be·held liable for the exercise of reasonable care and diligence in constructing a channel of sufficient size to carry the volume of water that may be reasonably anticipated to flow down it, and for the maintenance of the same in a reasonably safe condition. (*Wilson v. Boise City*, 6 Ida. 391, 55 Pac. 887; *Willson v. Boise City*, 20 Ida. 133, 117, Pac. 115, 36 L. R. A., N. S., 1158.)

The important purpose of C. S., sec. 3847, requiring claims for damages against cities of the first class to be "filed with the city clerk within thirty days after the time, when such claim shall have accrued, specifying the time, place, character, and cause of said damage," is to give the city notice of the claim and opportunity "to ascertain the extent of the injury, investigate its cause, and determine the liability of the city." (*Dunn v. Boise City, supra.*) The claim filed by Dunn contained an item of damage to "Lawn covered with water, silt, slime, and debris." The court admitted evidence of damage to a lily pond and shrubbery situate on the lawn, under this item, and instructed the jury they might assess damages for said items. The claim filed by Baker contained the items, "Washing foundation of house, covering ground and floors of outbuildings with water, silt, slime, debris, and otherwise damaging property," under which, over objections of appellant, plaintiff was permitted to show damage to the floor of Baker's dwelling. We think these items fairly embraced within the specifications of the claims, and that the court did not err. The city was promptly notified, and immediately investigated and ascertained the extent of the damage done.

At the trial, over objection, the mother of plaintiff was permitted to testify that, at the time of the flood, she was ill in bed at plaintiff's home. The court instructed the jury to disregard this testimony, and there is no showing that appellant was prejudiced thereby.

The giving of, and refusing to give, certain instructions involving the liability of appellant is assigned as error. Deeming the questions raised by these assignments to have been disposed of by what has already been said, they will not be discussed.

At the conclusion of the testimony, after both sides had rested and plaintiff had made the opening argument to the jury, defendant's counsel began his argument. Counsel for plaintiff then moved the court for leave to reopen the case in order to permit proof of the assignment of Baker's claim to plaintiff. This motion was granted over objection, and the proof received, which is assigned as error. Whether the court will reopen the case for further evidence after commencement of the argument (38 Cyc., p. 1367; see note, Ann. Cas. 1913C, 1011) or after it has been concluded, is within the sound discretion of the court. (38 Cyc., p. 1367; *Watt v. Stanfield,* 36 Ida. 366, 210 Pac. 998.)

The record shows that prior to the commencement of the action, Baker orally assigned his claim to Dunn for collection. It was not necessary to allege or prove any other consideration for the assignment to entitle Dunn to maintain an action on said claim. (*Brumback v. Oldham,* 1 Ida. 709; *Craig v. Palo Alto Stock Farm,* 16 Ida. 701, 102 Pac. 393; *Anderson v. Coolin,* 28 Ida. 494, 155 Pac. 677; *Knowles v. Kasiska,* 46 Ida. 379, 268 Pac. 3.)

Finding no substantial error, the judgment is affirmed. Costs to respondent.

Budge, C. J., and Givens, T. Bailey Lee and Wm. E. Lee, JJ., concur.