## WEIDMAN v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   June 12, 1903.)

1. MUNICIPAL CORPORATION — DEFECTIVE SEWER — DAMAGE TO ABUTTING PROPERTY—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

Twice in July, 1898, and once in April, 1899, a heavy rain caused water to back up from a sewer into a cellar on adjoining property.   After each occurrence the city sent workmen to remedy the trouble, and they found the sewer obstructed by rocks, etc., which they removed.   On the last occasion the workmen were compelled to dig down to the sewer.   While they were at work, a fresh flood caused greater damage than ever, the water coming into the cellar not only through the sewer trap, but also through crevices in the front wall.   When the sewer was reached, it was found broken, owing to the sinking of the ground.   After its repair, there was no further difficulty.   *Held*, that no negligence in the city was shown, subjecting it to damages to the abutting owner.

**2. SAME—CITY AS INSURER.**

A city is not an insurer of the condition of its sewers, though it is bound to use reasonable care in keeping them in repair.

ι Patterson, J., dissenting.

Appeal from Trial Term, New York County.

Action by William Weidman against the city of New York. From a judgment for defendant, entered after a dismissal of the complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

W. M. Rosebault, for appellant.

T. Connoly, for respondent.

VAN BRUNT, P. J. This action was brought to recover damages by the lessee of premises in Second avenue, in the city of New York, which were on the 4th and 18th of July, 1898, and on the 7th, 8th, 23d, and 24th of April, 1899, flooded by water backing up from the sewer which the defendant had constructed and laid through the street in front of the said premises. It was alleged that the cause of these floods was the defendant's negligence in the construction of the sewer and in failing to keep it in repair; and also that in April, 1899, when one of the floods occurred, the defendant so negligently conducted itself in attempting to repair the sewer as to cause another flood. The answer of the defendant was a general denial. There was no evidence whatever tending to show any negligence upon the part of the defendant in the construction of the sewer; but it did appear that upon the 4th and 18th of July, 1898, and on the 7th of April, 1899, water backed up from the sewer, it raining very hard when the overflow took place on those dates. After each of the above-mentioned overflows the defendant sent workmen to remedy the trouble, and they found that the sewer was obstructed by rocks, stones, etc. On the two occasions in July the trouble was quickly remedied by the removal of these obstructions, but in the beginning of April the workmen found the difficulty greater, and were kept at work until some time in May. They pumped the water out of the plaintiff's cellar, and used a steam pump drawing up the water through the manhole near the plaintiff's premises, but about April 23, 1899, finding that the water was still not flowing properly through the sewer, they were compelled to open the street, and dig down to the sewer; and in doing so they used heavy sledge hammers to break the stones that were in the way, and sound their way with long and heavy bars of iron. While they were at work in this manner, a fresh flood occurred, which caused greater damage than any of those that had occurred previously, the water coming into the cellar not only through the sewer trap, but also through the crevices between the stones of the front cellar wall. When the men reached the sewer, they found it broken, with fragments lying in the pipe, and choking it up. After the repair of the sewer, there was no further difficulty. There was evidence tending to show that when the sewer pipe was uncovered it was found that prior to the total breakdown of

¶ 2. See Municipal Corporations, vol. 36, Cent. Dig. § 1776.

the sewer there had been a partial depression of the pipe, which had reduced its former diameter of 18 inches to about 9 inches, thus creating a place where obstructions to the passage of the sewer would naturally accumulate. Upon this state of the evidence the complaint was dismissed, and from such dismissal this appeal is taken.

We fail to see where there is any evidence of negligence upon the part of the city in reference to its care of the sewer in question. When notified of the overflow, it immediately set to work to remedy the difficulties, if any; and after the overflows in July, 1898, when obstructions were found which accounted for the overflow, the sewer performed its work until April, 1899, and from the time when it first received notice of this latter overflow its workmen were continuously working at it in order to remedy the defect therein, and they then found that there was a depression in the sewer, which had a tendency to accumulate foreign matter and diminish its capacity very materially. As soon as this was discovered, it was remedied, and the sewer has performed its functions properly ever since, so far as the evidence shows. The city is not an insurer of the condition of its various appliances for the comfort and convenience of its inhabitants, but is bound to use reasonable care and diligence in caring for these various appliances and in keeping the same in repair. In the case at bar, after the repairs were made to the sewer in July, 1898, the city had no reason to suppose that there was any defect in the sewer itself, but that the results which then obtained had been caused by foreign matter, which they had no reason to suppose would be injected into the sewer. And it was only when they found that the ordinary means of rectifying the difficulty did not produce proper results that they became suspicious of the fact that something was wrong with the sewer itself, and they immediately set about to go down to it to remedy the defect, and it was in the progress of this work that much of the damage sought to be recovered here was suffered. There was no evidence whatever that any improper measures were resorted to in the conduct of the work of repair. The force they were compelled to use in getting down to the sewer by means of sledge hammers, drill, etc., was necessary because of the nature of the filling above the sewer. We cannot say, therefore, that the city was guilty of any negligence in the manner in which it conducted itself in relation to the maintenance and repair of this sewer.

The judgment should therefore be affirmed, with costs. All concur, except PATTERSON, J., who dissents.